IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KLIMA WELL SERVICE, INC.,

Plaintiff

vs.                                                    Case No. 14-1250-SAC

HARRY HURLEY, et al.,

Defendants.

MEMORANDUM AND ORDER

This is an action brought to collect oil and gas lease unit
operating expenses which were billed to, but not paid by the three individual
defendants holding working interests in these leases. The plaintiff Klima Well
Service, Inc. ("KWS") brought this action in state court as the operator of
the oil and gases leases operated as the Alameda Unit in Kingman County,
Kansas. (Dk. 7-1). The defendants removed this action based on diversity
jurisdiction, and the plaintiff's motion to remand it was denied. (Dk. 22). At
this point in the proceedings, the action against defendant Scott Scammell
III has been dismissed by joint stipulation (Dk. 24), the defendant Miles
Herson has had a clerk's entry of default entered against him for failure to
file an answer or other defense (Dk. 33), and the defendant Harry Hurley
("Hurley") has defended the action and filed the pending motion for
summary judgment (Dk. 35) which is the subject of this order. Two weeks

after Hurley filed his motion, the parties held their final pretrial conference, and the pretrial order was filed the same day. (Dks. 39 and 40).

KWS's original petition filed July 11, 2014, in the District Court of Kingman County, Kansas, alleged Hurley's indebtedness for operating expenses attributable to his undivided 2.7% working interest incurred from February 1, 2013, through February 28, 2014, and totaling $75,296.56 plus interest at the annual rate of ten percent. (Dk. 7-1). The petition also alleged that KWS holds a valid and perfected mechanic's lien for this amount on Hurley's working interest based on a Statement of Lien on Oil and Gas Lease filed in the county clerk's office. KWS's petition asked for foreclosure on the mechanic's lien. In the prayer for relief, KWS's petition pleaded:

> For a money judgment against Defendant Harry Hurley in the amount of Seventy-five Thousand Two Hundred Ninety-six Dollars and Fifty-six Cents ($75,296.56) for amounts owed through February 28, 2014, and for the foreclosure of the mechanic's lien filed by the Plaintiff against the undivided interest of Harry Hurley; for a money judgment against Defendant Harry Hurley for operating expenses incurred for the months of March, April and May totaling $10,736.17, and for future operating expenses incurred from June 1, 2014, forward, until the time of sale, together with interest thereon at the rate of 10% per annum until paid . . . .
>       . . . .
> For the foreclosure of the mechanic's liens held by the Plaintiff against the respective undivided working interests of the Defendants in the Alameda Unit; for its court costs herein, and for such other and further relief as the Court may deem just and equitable.

(Dk. 7-1, p. 7).

Hurley seeks summary judgment arguing three issues. First, KWS may not enforce a mechanic's lien only against Hurley's working

interest, as the Kansas oil and gas mechanic's lien statute, K.S.A. 55-207, provides the lien is "upon the whole of such leasehold." Second, KWS may not claim a valid mechanic's lien because KWS never contracted with Hurley to do work on the Alameda Unit. Third, KWS may not claim an implied contract with Hurley, because there is an express agreement between KWS and Hurley, the Alameda Plan of Unitization, which KWS has breached so as to render it unenforceable.

**STANDARDS GOVERNING MOTION**

Rule 56 authorizes a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it would affect the outcome of a claim or defense under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he dispute about a material fact is "genuine, . . ., if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 251-52. The summary judgment movant bears the initial burden of pointing out those portions of the record that show it entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert.*

*denied*, 506 U.S. 1013 (1992). If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

**STATEMENT OF UNDISPUTED FACTS**

The court regards the following statements to be undisputed based on the parties' summary judgment filings and on their stipulations found in the pretrial order.

1. KWS has been the operator of the Alameda Unit since November 1, 2011, as stated in Dennis Klima's affidavit. KWS also owns a 5.4% working interest in the Alameda Unit, and Klima Oil, Inc., a company related to KWS, owns an 11% working interest in the unit.

2. As reflected in an assignment of working interest dated March 6, 2013, Hurley is the owner of a 2.7% working interest in the Alameda unit that was assigned to him by Impact Global Resources.

3. Starting in March of 2013, KWS sent monthly joint interest billings to Hurley for his share of the operating expenses attributable to the Alameda Unit. These billings were sent by email at Hurley's request. According to Klima's affidavit, Hurley "has been billed for normal lease unit operating expenses through June 30, 2015 identified as account No. "HURH-0." (Dk. 41-1, ¶ 4). The attached billing statements for this account go through March of 2014 and show a balance of $61,684.39. (Dk. 41-5, p. 24). Klima's

affidavit also refers to a separate account No. "HURH-1" "for the purchase and installation of the generator to power the producing wells," (Dk. 41-1, ¶ 4), and the attached billing statements on this account show a balance of $13,612.17, (Dk. 41-5, p. 36).

4. From the date that Hurley acquired his working interest in the Alameda Unit, KWS produced oil that has been sold to the crude purchaser NCRA of McPherson, Kansas. Hurley received his share of NCRA sale proceeds through April of 2014. After that, the runs payable to Hurley have been placed in suspense by NCRA due to his non-payment of operating expenses.

5. KWS filed its mechanic lien on April 8, 2014. (Dk. 41-5, p. 1). The lien describes the "leasehold working interest owner" as Harry Hurley and describes the "leasehold property" as Hurley's 2.7% working interest in the Alameda Unit. The lien states:

> KLIMA WELL SERVICE, INC., pursuant to a contract with HARRY HURLEY, and as operator of the above described oil and gas leasehold from Feburary 1, 2013, through February 28, 2014, performed labor and furnished material, machinery and oil well supplies and services in connection with operating, drilling and completing of wells located upon the above described leasehold estate. KLIMA WELL SERVICE, INC., remains unpaid for labor and material machinery and oil well supplies furnished for the above stated time period, which services, materials, machinery and supplies are described on Exhibit "C", which is attached hereto and made a part hereof by reference.

(Dk. 41-5, p. 1).

6. In the pretrial order, the parties stipulate that, "Hurley did not directly contract with Plaintiff to perform the labor or furnish the oil-well

supplies on the Alameda Unit which Plaintiff claims entitles it to a statutory lien against Hurley's undivided working interest."  (Dk. 40, p. 2).

7.  The parties also stipulate that, "The labor performed and oil-well supplies furnished on the Alameda Unit, which are more particularly described in the Statement of the Lien Plaintiff filed in the Kingman County District Court, and which Plaintiff alleges entitle it to a Statutory lien against Hurley's undivided working interest, arise from a contract or contracts Plaintiff entered into with itself." *Id*.

8. Another of the parties' stipulations states, "The management, operation and development of the Alameda Unit among Plaintiff as operator and Hurley as working interest owner are governed by the 'Plan of Unitization and Operation-Alameda Unit-Kingman County, Kansas' ('Operating Agreement'), which is recorded in Book Misc. 126, at Page 161 of the Office of the Register of Deeds of Kingman County, Kansas." *Id*. The parties also stipulate that KWS "has breached Sections 11, 13.6 and 17.2 of the Operating Agreement." *Id*.

9. The parties stipulate that, "Other than Operating Agreement, there is no written agreement between Plaintiff and Hurley pertaining to the Alameda Unit." *Id*. Finally, there is a stipulation that, "Plaintiff has never obtained express authorization from Hurley to make expenditures on the Alameda Unit." *Id*.

**DISCUSSION**

The court will address only the issues that have been properly and timely advanced in the summary judgment pleadings and that have been cogently argued and properly supported with the necessary legal authorities.

### *Mechanic Lien upon the Whole of such Leasehold*

Hurley argues that a plain reading and strict construction of K.S.A. 55-207 shows KWS's lien to be invalid in that it is filed against only Hurley's working interest and not against the whole leasehold. Hurley chooses to read the statute as to "not provide for a lien upon less than the whole of the leasehold." (Dk. 36, p. 7). Thus, Hurley advocates that § 55-207 simply "cannot be used to lien a factional undivided working interest." *Id.* According to Hurley, if KWS had complied with the statute consistent with his interpretation, then KWS would have been forced to file a lien against itself for work it contracted with itself to do. Hurley concludes, "[f]or obvious reasons, the statute does not allow for the type of abusive behavior Klima has engaged in, and Klima's claim fails as a matter of law." (Dk. 36, p. 8).

The shortcomings in Hurley's position begins with his failure to cite a single legal authority for the proposition that the validity of an oil and gas mechanic's lien depends on the lien statement reciting that it covers "the whole of such leasehold." K.S.A. 55-207. The court's own research has not turned up any decision supporting this position. Hurley is left to

grounding his argument on no more than the general proposition that these statutes must be strictly construed and followed in order to create a valid mechanic's lien. Because the statute provides the general broad scope of an oil and gas lien, Hurley concludes that the plaintiff's lien must be invalid because it attempts to attach an interest narrower than allowed by statute. Hurley's argument stands on nothing than that for KWS "to enforce its mechanic's lien against Hurley's factional undivided working interests in the Alameda Unit, not the unit as a **whole** [is] contrary to the express language of the statute." (Dk. 36, p. 8). Hurley does not articulate any policy reasons behind the purpose or operation of the statute that would support his reading. Instead, he offers only that his position is based on a "plain-language reading" of the statue. *Id*. The court certainly has to wonder just how plain it is when Hurley does not cite a single case supporting his reading of this part of K.S.A. 55-207 which has been on the Kansas books for over 100 years[1]  and when this reading has been expressly contradicted by a recognized authority in Kansas oil and gas law as discussed below.

"K.S.A. 55-207 to 55-210, inclusive, confer special oil and gas mechanics' lien rights," and the Kansas Supreme Court has "consistently held that mechanics' lien laws are to be strictly construed against a claimant and that their scope is restricted to that clearly granted by the legislature." *Sfeld Engineering, Inc. v. Franklin Supply Co.*, 247 Kan. 146, 147, 795 P.2d

---

[1] *Mountain Iron & Supply Co. v. Branum*, 200 Kan. 38, 41, 434 P.2d 1015 (1967).

60 (1990). "The basic philosophy behind the oil and gas lien statute:  where one by agreement with an owner enhances the value of the leasehold by furnishing labor or materials, that person should have an interest in the lease to the extent of the value of the labor and materials furnished." *D Oil, Inc. v. Brungardt*, 13 Kan. App. 2d 142, 143, 764 P.2d 851 (1988), *rev. denied*, 244 Kan. 736 (1989) (citing *Bassett, Trustee v. Carpenter*, 114 Kan. 828, 831, 220 Pac. 1028 (1923)). The Kansas Supreme has recognized the "basis upon which this class of legislation [oil and gas lien] rests . . . [as] well stated by Justice Brandeis:"

> ". . . The principle upon which the mechanic's lien rests is, in a sense, that of unjust enrichment. Ordinarily, it is the equity arising from assumed enhancement in value resulting from work or materials expended upon the property without payment therefore which is laid hold of to protect workmen and others who, it is assumed, are especially deserving, would ordinarily fail to provide by agreement for their own protection and would often be unable to do so."

*Adair v. Transcontinental Oil Co.*, 184 Kan. 454, 464, 338 P.2d 79 (1959) (quoting *Piedmont Coal co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 9, 10 (1920)); *see* David Pierce, Kansas Oil and Gas Lien Law, 56-Aug J. Kan. B.A. 8, 9 (1987) ("The prevention of unjust enrichment" is the operating concept "referred to in numerous Kansas cases and offers an analytical guide for applying the lien statutes.") (footnotes omitted)). Nonetheless, "since the mechanic's lien is an entirely statutory device, technical requirements dictated by the statutes as vital to a lien's validity must be strictly met."

*DaMac Drilling, Inc. v. Shoemake*, 11 Kan. App. 2d 38, 40, 713 P.2d 480

(1986).

As Hurley correctly notes, K.S.A. 55-207 defines who is entitled

to a lien as well as the scope of any lien:

> Any person, corporation or copartnership who shall under contract,
> express or implied, with the owner of any leasehold for oil and gas
> purposes, . . . who shall perform labor or furnish material, machinery
> and oil-well supplies used in the digging, drilling, torpedoing,
> completing, operating or repairing of any oil or gas well, . . . shall have
> a lien upon the whole of such leasehold, or oil pipeline or gas pipeline,
> or lease for oil and gas purposes, the building and appurtenances, and
> upon the material and supplies so furnished, . . . .

In short, the lien covers the whole leasehold, and any contract with the

owner of any leasehold is sufficient to give rise to the lien. Hurley wants this

statute to say that a claimant cannot seek a lien narrower than the whole

leasehold and that a lien statement must specify the whole leasehold in

order for it create a valid lien.

Hurley has not timely presented with legal support the argument

that Kansas law bars KWS from ever securing an oil and gas lien under

K.S.A. § 55-207 when it is both an operator of and a working interest owner

in the leasehold.[2] While Hurley does not timely pursue this argument, it is

---

[2] For the first time in his reply brief, Hurley purports to argue that the
statutory lien provisions of K.S.A. 55-207 are "not there to provide relief to
rogue lessee-operators, such as Plaintiff, who leisurely contract with
themselves to perform labor and furnish supplies in willful disregard for the
binding agreements they have with their co-lessees." (Dk. 42, p. 11).
Arguments raised for the first time in a reply brief are waived and will not be
considered. *Water-Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1159 n.8

the Kansas case law discussing this issue that dispels his argument against limited oil and gas mechanic's liens. Professor David Pierce, a recognized authority in oil and gas law in Kansas,[3] observed in his 1987 article in the Kansas Bar Journal, that the Kansas Supreme Court in *Davis v. Sherman,* 149 Kan. 104, 86 P.2d 490, 493 (1939), in *dicta*, had looked at precedent involving the problematic situation of a statutory lienholder also owning a leasehold interest but pointed out a distinction between when the lien is "claimed on the entire lease and not merely the interest of the cotenant." David Pierce, Kansas Oil and Gas Lien Law, 56-Aug J. Kan. B.A. 8, 11 (1987); *See John Carey Oil Co., Inc. v. W.C.P. Investments*, 126 Ill.2d 139, 146, 533 N.E.2d 851 (1988) (stating that *Davis* suggests in *dicta* "that a lien claimed only upon the fractional interest of a cotenant and not upon the whole leasehold might be enforceable."). Indeed, the ability of an operator with a working interest to obtain a lien only upon a fractional interest held by another owner gets around the general rule in Kansas that "an owner-operator may not claim a lien against an entire oil and gas leasehold in

---

(10th Cir. 2013). Not only is Hurley's argument untimely, but it is made without citing any legal authority in support of it.

[3] As the author to a recent law review article surveying recent Kansas oil and gas law, Professor Pierce was described as the Norman R. Pozez Chair in Business and Transactional Law and Director Washburn Oil and Gas Law Center, Washburn University School of Law. David E. Pierce, 2014 Survey on Oil & Gas:  Kansas, 1 Texas A&M Law Review 79 (2014). The Kansas Supreme Court has described Pierce's work as an "authority." *See Edmonston v. Home Stake Oil & Gas Corp.*, 243 Kan. 376, 380, 762 P.2d 176 (1988).

which he has an interest." *John Carey Oil Co.*, 126 Ill.2d at 146. In his

article, Professor Pierce concluded:

> If we follow the unjust enrichment interpretive guide, there doesn't
> seem to be any reason why a working interest owner should be denied
> a lien for benefits conferred to the other working interest owners in the
> leasehold. For example, suppose **A**, **B**, and **C**, each own an undivided
> # interest in the leasehold. **A** is the operator. **A** provides labor,
> material, and supplies necessary for the operation of the lease. If **B**
> and **C** fail to pay their proportionate share of the lease operation
> expenses, they will be unjustly enriched. In this situation **A** should be
> permitted to assert a lien against **B** and **C** because **A** has an express
> or implied contract with an owner of the leasehold. **A** has not
> contracted with himself; his contract is with **B** and **C**.

56-Aug J. Kan. B.A. at 11. So, while the statute may set the intended

breadth of the statutory lien to reach the whole leasehold, the defendant has

pointed to nothing in the statute or cited any case law that says the lien

claimant must pursue the full breadth of available relief for a statutory lien

to be valid. The Kansas Supreme Court in *dicta* has recognized an operator's

ability to pursue a lien on less than the whole. In short, the defendant's

proposed reading of K.S.A. § 55-207 is not only not plain on its face, but the

reading is contrary to the unjust enrichment philosophy underlying the

statute.

K.S.A. § 55-209 sets forth the requirements for the oil and gas

mechanic's lien statement. It sets out where and when the statement must

be filed, what the statement must contain, and upon whom it must be

served. Hurley refers to nothing in K.S.A. § 55-209 that requires a lien

statement to describe the property subject to the lien as the whole

leasehold. Arguably, the statute contemplates that the "description of the property subject to the lien, whether personal or real or both," may be different in scope from the whole leasehold.  K.S.A. § 55-209. The possible reasons for a difference may be owing to the terms of the underlying transaction and to the claimant's intentions and desires in pursuing only some property subject to the lien. Like all statutes setting the requirements for lien statements, their purpose is "to give notice to the owner and to third persons of the intent to claim a lien for a definite amount." Nancy Saint-Paul, 4 <u>Summers Oil and Gas</u> § 47:9 (3d ed. 2014). A description need only be "sufficiently definite to identify the property to be sold." *Ball v. Oil & Gas Co.*, 113 Kan. 763, 769, Pac. (1923). "The description of the real property in lien statement is therefore unimportant except as it aids in pointing out the leasehold." *Gaudreau v. Smith*, 141 Kan. 123, 125, 40 P.2d 365 (1935). It is enough that the lien statement makes "it clear what leasehold was intended" and that no one is misled or deceived. *Id.* Hurley's arguments do not establish a § 55-209 deficiency that precludes perfection or foreclosure of the lien.

Finally, the court is persuaded by Professor Pierce's opinion on the propriety under Kansas law in seeking a lien for less than the whole leasehold:

> When preparing the lien statement, you should be careful not to unintentionally limit its potential scope. However, if you desire to limit the lien to a particular party's working interest, this would seem permissible under Kansas law. Although there are no Kansas cases

> directly on point, permitting tailored liens would avoid tying up
> property which, though technically subject to the broad scope of the
> lien, is not equitably responsible for the default. Operators typically
> tailor their lien statements to assert a lien only against the property of
> working interest owners who are not paying their share of operating
> costs. This practice coincides with the unjust enrichment rationale for
> the statute and should meet with court approval.

56-Aug J. Kan. B.A. at 14 (footnotes omitted). The court concurs that the

unjust enrichment policy is fostered when operators can tailor their liens to

the defaulting working interest owners. The operator certainly should be able

to collect the debts of a defaulting working interest owner without filing liens

and upsetting all the rest of its customers who are not in default. In sum,

the court is not persuaded by Hurley's arguments for reading either K.S.A. §

55-207 or § 55-209 as requiring an oil and gas lien statement to cover the

whole leasehold. Hurley has not shown that KWS's lien is invalid in pursuing

only his undivided fractional working interest.

*Contractual Obligation Underlying the Lien*

Again relying on K.S.A. § 55-207, Hurley argues KWS may not

claim a valid mechanic's lien because KWS never contracted with Hurley to

do work on the Alameda Unit. The pretrial order sets out a number of

stipulations to which Hurley looks for factual support. First, the Operating

Agreement governs the management, operation, and development of the

Alameda Unit between the plaintiff as the operator and Hurley as a working

interest owner. Second, the plaintiff has breached certain terms of the

Operating Agreement. Third, the plaintiff's lien is for services performed and

materials furnished on the Alameda Unit for which Hurley did not directly contract with the plaintiff but from a contract or contracts that the plaintiff entered with itself. Finally, the parties stipulate that there is no other written agreement between the parties concerning the Alameda Unit and that plaintiff did not obtain express authorization from Hurley for these operating expenses. Hurley concludes that KWS's lien is invalid because there is no contract with him to enforce.

KWS responds that Alameda Unit's working interests have been assigned over the years but always have been subject to the Operating Agreement which remains "the legal authority that created and sustains the individual leases as a unit to this day." (Dk. 41, p. 8). KWS takes issue with Hurley's cursory argument that KWS's admitted breach of the operating agreement somehow relieves him of liability for the operating expenses. KWS points to circumstances for arguing that Hurley has waived these breaches of the Operating Agreement. Specifically, Hurley signed a division order attesting to his ownership of the working interest by assignment, he accepted oil run checks for thirteen months, he received KWS's billings for operating expenses during the same period, and he never objected or complained about KWS's related breaches of the Operating Agreement during that period. Alternatively, KWS relies on the same facts to argue that Hurley remains liable for operating expenses under theories of implied contract and unjust enrichment. In reply, Hurley repeats his summary

position on the Operating Agreement having been breached, denies any other contractual basis for his liability, and insists KWS's arguments for implied contract and unjust enrichment have not been pled.

Hurley's arguments confuse the issue. K.S.A. 55-207 simply requires the lien claimant to have a contract "with the owner of any leasehold for oil and gas purposes, . . . or with the trustee or agent of such owner." The contract must be "with the owner of the oil and gas lease, or some share or interest therein." *Williams v. Otstot Oil Co.*, 129 Kan. 210, 212, 282 Pac. 710 (1929); *see Mendenhall v. Producing Co.*, 115 Kan. 729, 733-34, (1924) (one leasehold owner could not defeat lien by arguing he did not contract for services). Hurley's arguments for summary judgment based on K.S.A. § 55-207 fail, because he has not shown that KWS's lien was for work that was not done under a contract with an owner of any share or interest in the leasehold. Indeed, the parties have stipulated that the work was done based on a contract with the operator who also is an owner of a working interest and also an agent under the operating agreement on behalf of the other working interest owners including the other defendants and Klima Oil. To prevail on this issue, Hurley would have to establish that the operating agreement was invalid as to all working interest owners and that KWS did not act as a proper agent on behalf of these other working interest

owners in contracting for these services.[4] Thus, Hurley's summary judgment

arguments against the validity of the mechanic's lien are not prevailing.

*Implied Contract*

In his motion, Hurley's last issue consists of the following

arguments. KWS is unable to assert an implied contract with him, because

their express operating agreement necessarily precludes an implied contract

from arising. Hurley advances this argument under the erroneous

understanding that a lien's validity under K.S.A. § 55-207 requires a

contract for services to exist between him and KWS. Thus, this issue fails for

the same reasons.

Because the defendant's initial motion challenged only the

mechanic's lien on the arguments decided above, the court has been

constrained by proper procedure from taking up the other issues arising in

the parties' response and reply briefs. To have done otherwise would have

meant deciding arguments which were not fully briefed. The court, however,

will offer its impression on an issue found in the pretrial order but never

properly presented to the court for ruling. This is only the court's impression

---

[4] Hurley's efforts to avoid his liability for the operating expenses based on the admitted breaches of the operating agreement are presented with too little depth of legal analysis to warrant serious discussion in this order. Even if the court were to discuss this issue, the defendant's motion would be denied because of the genuine issues of material fact created by the plaintiff's properly raised arguments over the defendant's waiver of this defense to liability. The parties do not make any serious effort to discuss the material terms of the Operating Agreement or to provide proper summary judgment factual presentations on how the material terms of the agreement have been interpreted and followed by the parties.

made without the benefit of this matter being fully briefed and argued by the

parties. Thus, the following will not be binding on the parties at this time.

KWS's original petition alleges the unique legal relationship

between an operator and a working interest owner and the failure of the

latter to pay his proportionate share of the regularly incurred operating

expenses. As already mentioned above, Kansas law on oil and gas

mechanic's lien is grounded on an unjust enrichment policy:

> In such case the law looks upon the operator of the lease as the agent
> of the owner, for lien purposes, upon the theory that the owner will
> not be allowed to reap the benefits of the operation without at the
> same time subjecting the lease to the satisfaction of payment for that
> which produced the benefits.
> This is an agency by operation of law, a theory based upon
> fiction to be sure. [citation omitted]. Why should an owner of a
> leasehold be unjustly enriched at the expense of those who perform
> labor and furnish material?
> It is recognized in this jurisdiction that the lien of one who
> performs labor and furnishes material for the operation and
> development of an oil and gas lease is a creature of statute and in
> derogation of the common law.

*Adair v. Transcontinental Oil Co.*, 184 Kan. at 464. Not only did KWS's

petition allege their unique legal relationship and the obligations involved in

it, but the petition also alleged the plaintiff's use of Kansas oil and gas lien

laws and the special privileges in them, *see Interlake, Inc. v. Kansas Power

& Light*, 231 Kan. 251, 253, 644 P.2d 385 (1982). It is established law in the

Kansas:

> Operating agreements are quite common in the oil and gas business
> and can be indispensable to the conduct of such business when there
> is more than one working interest owner. *See Browne v. Loriaux*, 189
> Kan. 56, 63, 366 P.2d 1016 (1961). The operating agreement is

> designed to coordinate development of the property by designating an
> "operator" and by specifying each working interest owner's rights and
> obligations. Such agreements generally address the authority of the
> operator to act on behalf of the nonoperators. 2 Pierce, <u>Kansas Oil &
> Gas Handbook</u>, § 17.l7 (1989).

*Larson Operating Co. v. Petroleum, Inc.*, 32 Kan. App. 2d 460, 466, 84 P.3d

626, 631 (Kan. App. 2004). The petition arguably provided notice that the

plaintiff operator was seeking to recover these unpaid operating expenses

pursuant to the Kansas law on operating agreements, on oil and gas

mechanic's liens, and on the policy behind these laws which opposes

leasehold owners from being unjustly enriched at the expense of those who

perform labor and furnish material for the operation of an oil and gas lease.

IT IS THEREFORE ORDERED that the defendant Hurley's motion

for summary judgment (Dk. 35) is denied.

Dated this  24th  day of September, 2015, Topeka, Kansas.


__s/ Sam A. Crow _____
Sam A. Crow, U.S. District Senior Judge