**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KLIMA WELL SERVICE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:14-cv-01250-JTM |
| ) | |
| HARRY HURLEY, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT HARRY HURLEY'S RESPONSE TO KLIMA WELL SERVICE, INC.'S
MOTION TO SUBSTUTE PARTIES**

COMES NOW Defendant Harry Hurley ("Hurley"), by and through his counsel of record, and submits his Response to Klima Well Service, Inc.'s ("Klima") Motion to Substitute Parties. In opposition to Klima's Motion, Hurley states as follows:

**INTRODUCTION**

This case is, and always has been, a case involving Klima's attempted enforcement and foreclosure of a K.S.A. § 55-207 contractor's lien. Klima now asks the court to allow Mark Keenan, Keenan Business Group, LLC, William Conner, Conner Oil & Gas, LLC, and C&K Operating, Inc. (collectively, "Substitute Parties") to substitute into this case. The purpose for substitution being to allow the Substitute Parties a forum to collect ancillary debts they openly admit have been settled and paid. It is truly a perverted notion that a co-working interest owner and alleged unit operator – who operates at the direction of, and in a fiduciary capacity for the benefit of the non-operator co-working interest owners – could collect the forgiven debts of the unit against its co-working interest owners and for its own pecuniary benefit. But that is not what this case is about. This is a case of a contractor's lien.

In support of its motion, Klima cites to a recent agreement entered into among Klima and the Substitute Parties. Under that agreement Klima transferred its working interest in the Alameda Unit (the "Unit") to Keenan Business Group, LLC ("KGB") and Conner Oil & Gas, LLC ("CO&G"). Klima also (improperly) transfers its role as operator of the Unit to C&K Operating, LLC ("C&K"), which is jointly owned by KGB and CO&G. Each of these transfers only involve the distinct rights of Klima as a co-working interest owner and operator of the Unit ("Klima-Operator"). The transfers have nothing to do with the lien rights Klima as a contractor ("Klima-Contractor") assert in this case – which the Substitute Parties admit have been satisfied and paid. It is the contractor lien rights, those of Klima-Contractor, which are the basis of recovery in this case. The Substitute Parties have not been transferred the contractor lien rights of Klima-Contractor. As such, no interest in the litigation has been transferred and substitution is improper under FED. R. CIV. P. 25(c), and this Court should deny Klima's motion.

## ARGUMENTS AND AUTHORITIES

FED. R. CIV. P. 25(c) provides: "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." The decision of whether substitution is proper is within the court's discretion. *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 322 F. App'x 630, 632 (10th Cir. 2009); *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1324 (10th Cir. 1978).

### I.   DISCRETION FAVORS REFUSING TO SUBSTITUTE PARTIES IN THIS CASE

Discovery has closed, dispositive motions have been filed, and the pretrial conference was conducted months ago.  *See* Scheduling Order (Doc. 27, p. 2); and Pretrial Order (Doc. 40).  Hurley would certainly have a number of new defenses and issues to raise based upon the subsequent transaction entered into among Klima and the Substitute Parties that would require the case to

essentially be litigated all over again. Klima and the Substitute Parties, therefore, propose a substitution that would serve to waste over a year's worth of efforts and tens of thousands of dollars from both sides if the case had to be re-litigated. The Substitute Parties chose to enter into a transaction to acquire the interests of Klima understanding full-well that it might have fatal consequences to this lawsuit. Rather than waste substantial time and money, this Court should simply exercise its discretion and deny substitution at this time.

In addition, as discussed below, based on the facts and circumstances of the case and the transaction between Klima and the Substitute Parties, substitution should not be permitted on a number of other bases.

## II. SUBSTITUTION IS IMPROPER BECAUSE THE SUBSTITUTE PARTIES LACK STANDING TO PURSUE THIS ACTION.

In order to have standing, a plaintiff must establish (1) injury in fact (2) a causal connection between the injury and conduct complained of and (3) a likelihood that a favorable decision can redress the suffered injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury must be "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Id.* (citing *Warth v. Seldin,* 422 U.S. 490, 508 (1975)) (internal quotations omitted). Further, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)) (internal quotations omitted). Finally, it must be "likely" rather than merely "speculative" that the court's decision could remedy the injury. *Id.*

Because the agreement between Klima and the Substitute Parties only transfers the rights of Klima-Operator and not those of Klima-Contractor, each of the Substitute Parties lacks at least one, if not more, of the requisite elements to establish standing. Because the substitute parties cannot establish standing, this Court should deny Klima's motion.

**A. The Substitute Parties do not hold the proper interest in this litigation, therefore, do not have an injury which is redressable by this Court.**

FED. R. CIV. P. 25(c) allows substitution of parties upon a transfer of interest. The substitute party should have the same interest in the outcome of the litigation as the substituting party did prior to the substitution. *See McMoran Oil & Gas Co. v. KN Energy, Inc.*, 907 F.2d 1022, 1024-25 (10th Cir. 1990) *rev'd sub nom. Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991) ("Rule 25(c) "presupposes that the *substituted* person was a party to the pending action but no longer maintains the same interest in the outcome as the substituting party") (emphasis in original). Klima is seeking to substitute the Substitute Parties because of a transferred interest. The interest at issue in this litigation is a contractor's lien asserted by Klima-Contractor against Hurley's undivided working interest in the Unit. Pretrial Order (Doc. 40, p. 2); Notice of Removal (Doc. 1, p. 11-12). The "contract" for the services underlying the lien is between Klima-Operator and Klima-Contractor.

As diagrammed below, Klima-Operator's agreement with the Substitute Parties does not transfer the interests of Klima-Contractor which are the sole basis for this litigation. By agreement with Klima-Operator, KGB and CO&G were each assigned a 2.7% working interest in the Unit. By agreement, Klima-Operator (improperly) assigned the role of Unit operator to C&K. As diagramed below, the interests of Klima-Operator in the Unit are distinct from Klima-Contractor's interest in a contractor's lien. No assignment has been made of Klima-Contractor's potential lien interest. In short, the Substitute Parties are "wearing the wrong hat", they were not transferred the interest that is the subject of this case and cannot be substituted in under to FED. R. CIV. P. 25(c). If Klima-Operator had paid Klima-Contractor there would be no lien upon the Unit, but Klima-Operator did not and has no debt to collect as a result. Because the substitute parties do not possess

the rights of Klima-Contractor, they do not have an injury which is redressable by this Court, and Klima's motion should be denied.



**B. C&K has not been properly substituted as the operator of the Unit, which leaves it without an injury that is redressable by this Court.**

C&K cannot be substituted because it has not been properly substituted as the operator of the Unit. The Pretrial Order was entered August 5, 2015. (Doc. 40). The Pretrial Order "controls the course of action unless the court modifies it." FED. R. CIV. P. 16(d). The Pretrial Order contains a stipulation that the operation and development of the Unit is governed by the "Plan of Unitization and Operation – Alameda Unit – Kingman County, Kansas" ("Operating Agreement"), and that

there is no additional written agreement regarding the Unit. Pretrial Order (Doc. 40, p. 2), Memorandum In Support of Summary Judgment (Doc. 36, p. 26).

Under the Operating Agreement, there is a mandatory procedure for the selection of a new operator. The Operating Agreement provides, in relevant part:

> 11.1 <u>Creation of Operating Committee</u>. An Operating Committee is hereby created to consist of one representative to be designated by each Working Interest Owner in the Unit Area, provided that an individual Working Interest Owner may be a member of said Committee…
>
> *******************
>
> 11.6 <u>Voting Procedure</u>. The Operating Committee shall decide all matters coming before it as follows:
>
> > 11.6.1 <u>Voting Interest</u>. Each Working Interest Owner shall have a voting interest equal to its Unit Participation.
> >
> > 11.6.2 <u>Vote Required – Generally</u>. Except as may otherwise be provided in this Plan, Working Interest Owners shall act upon and determine all matters coming before them by the affirmative vote of eighty percent (80%) or more voting interest, representing at least three Working Interest Owners. Provided further, that should any one Working Interest Owner own or control fifteen percent (15%) or more voting interest, its negative vote or failure to vote shall not defeat the matter being voted on unless supported by two or more Working Interest Owners having a combined voting interest of at least ten percent (10%).

Regarding the selection of a successor operator, the Operating Agreement provides:

> 12.3 <u>Selection of Successor</u>. Upon the resignation or removal of a Unit Operator, *a successor Unit Operator shall be selected by the Operating Committee*. If the Unit Operator that is removed fails to vote or votes only to succeed itself, the successor Unit Operatory may be selected by the affirmative vote of at least ninety percent (90%) of the voting interest remaining after excluding the voting interest of the Unit Operator that was removed. (emphasis added).

C&K has not been substituted as operator because it was not selected by the Operating Committee or approved by the requisite percentage vote. Klima-Operator and C&K deliberately circumvented the prescribed procedure by executing a separate agreement to substitute C&K as

operator upon Klima-Operator's resignation. Klima openly admits that this separate agreement does not comply with the Operating Agreement. Pretrial Order ¶ 2(a)(6) (Doc. 40, p. 2).

The Operating Agreement is the only document which controls the operations of the Unit, and the Operating Agreement provides a specific procedure to confirm a successor operator. A vote must be held, and the successor operator is approved only by obtaining at least a certain percentage of the voting interest. No vote was ever held to confirm C&K's appointment; therefore, C&K is not the operator of the Unit and it cannot be properly substituted as a party to this action. As a result, this Court should deny Klima's motion as to C&K.

### C. Mark Keenan and William Conner cannot be substituted because they have no interest in this litigation and thus lack an injury redressable by this Court.

Pursuant to the agreement, Klima-Operator transferred to Mark Keenan and William Conner "joint interest billings made for work done and expenses incurred prior to January 1, 2016, for which payment has not been received by [Klima]." Matters concerning joint interest billing are exclusively under the control of an operator. For the Alameda Unit, the joint interest billings were the exclusive responsibility of Klima-Operator. *See* Memorandum and Order (Doc. 44, p. 4) ("[Klima] sent monthly joint interest billings to Hurley for his share of the operating expenses attributable to the Alameda Unit").

As explained above, the rights of Klima-Operator are distinct from those of Klima-Contractor. The fact that Keenan and Conner received alleged rights from Klima-Operator does not give them the right to enforce the contractor's lien alleged by Klima-Contractor in this litigation. The terms of the agreement do not give Keenan and Conner the rights of Klima-Contractor, most important the lien interest which forms the basis of this action. In light of the foregoing, this Court should deny Klima's motion to substitute Keenan and Conner because neither individual has an interest in the litigation.

**D. Substitution is improper because Keenan Business Group, LLC, and Conner Oil & Gas, LLC lack standing because they cannot bring suit in Kansas.**

K.S.A § 17-76,126 provides:

[a] foreign limited liability company doing business in the state of Kansas may not maintain any action, suit or proceeding in the state of Kansas until it has registered in this state and has paid to the state all fees and penalties for the years, or parts thereof, during which it did business in the state without having registered.  K.S.A § 17-76, 126(a) (2014).

In order to register in Kansas, a foreign corporation must submit certain required information to the secretary of state's office. *See* K.S.A. § 17-7931 (2015). This provision applies to foreign limited liability companies. K.S.A. § 17-7902 (2015).

Neither KGB nor CO&G are registered to do business in Kansas. Exhibit A, Business Entity Search. The Substitute Parties only note that the sole owner of each company is a resident of Florida; it provides no information as to where these companies are registered. Even though these companies are not registered in Kansas, they are both doing business in Kansas. Both companies now hold a working ownership interest in and have an ongoing business relationship with the Unit, which is located in Kansas.

The consequences of this arrangement are clear. Because they are doing in business in Kansas, but are not yet registered in the state, KBG and CO&G are barred from maintaining any suit in Kansas, including this one. To allow otherwise would allow these companies to avail themselves of the courts of Kansas without respectively making themselves subject to suit in the state. Because neither KBG and CO&G can maintain a suit in Kansas, the Court should dismiss Klima's motion to substitute as to both companies.

**III. ASSUMING, *ARGUENDO* THAT THE SUBSTITUTE PARTIES HAVE A PROPER INTEREST, SUBSTITUTION IS STILL IMPROPER BECAUSE THE SUBSTITUTE PARTIES CANNOT RECOVER UNDER CLAIMS NOT PROPERLY PLED.**

 **A. Regardless of substitution, the Court should grant Hurley's objection to bar any claims for breach of contract, quasi-contract, quantum meruit, or unjust enrichment.**

If substituted, the Substitute Parties should be barred from recovering under any theory which has not been properly pled under either federal or Kansas pleading standards. Kansas courts have not adopted the new federal pleading standards adopted by Iqbal and Twombly. *Smith v. State*, 272 P.3d 1287, 2012 WL 1072756, *6 (Kan. Ct. App. 2012). Instead, "[a]ll the [Kansas] rules require is a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Id.* (citing *Rinsley v. Frydman,* 221 Kan. 297, 302, 559 P.2d 334 (1977)). Though it carries additional considerations, the Federal standard also requires, at a minimum that the complaint "give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Court should grant the Hurley's objections because Klima's initial Petition fails to meet both the Kansas and Federal pleading standard. The Petition does not contain anything labeled breach of contract, quasi-contract, quantum meruit, or unjust enrichment. There are no conclusory statements that Hurley is liable to Plaintiff under breach of contract, quasi-contract, quantum meruit, or unjust enrichment theories. There is no contract among Hurley or Klima referenced or described. These claims were pled for the first time in the Pretrial Order, which simply recites, "Klima is entitled to a money judgment…under the theory of breach of contract, and the equitable theories of quasi-contract, quantum meruit, and unjust enrichment. Pretrial Order ¶ 4(a)(2) (Doc. 40, p. 4). Even that conclusory statement fails pleading standards. In response, Hurley objected to adding these claims at such a late stage in the litigation on the basis that they

were not been properly pled. *Id.* The Court has not yet rendered a decision on these objections, and Hurley respectfully requests that the objections now be granted.

At no point before the entry of the Pretrial Order did Klima-Operator attempt to assert right to recovery in this case, which wholly involves the lien rights of Klima-Contractor. Klima failed to do even the bare minimum to put Hurley on notice that it might pursue any claim other than Klima-Contractor's foreclosure of a lien and money judgment for any deficiency amount. Even if the Substitute Parties are allowed to replace Klima in this action, they should inherit the litigation and Klima's position as they stand, including Klima's failures. The Substitute Parties were on notice of these deficiencies and that such objections existed, and nonetheless opted to bargain for the right to collect ancillary debts that Klima-Operator never paid, and which the Substitute Parties admittedly settled. Exhibit B, Letters to Hurley. Because Klima has not met either the Kansas or Federal standard for pleading any claim beyond foreclosure of Klima-Contractor's contractor's lien, these additional claims should be barred from consideration as improperly pled.

**B. Even if the unpled claims survive, the substitute parties cannot recover under contract or equitable theories.**

Regardless of whether the Substitute Parties seek to recover under a theory of breach of contract or an equitable theory, such recovery is barred. The Substitute Parties cannot recover under a breach of contract theory because *Klima*, not Hurley, breached the Operating Agreement, the only contract in this case. By Klima's own admissions, the Operating Agreement is the only contract relevant to this litigation. Klima has admitted that no agreement exists between Hurley and Klima other than the Operating Agreement. Pretrial Order ¶ 2(a)(7) (Doc. 40, p. 2). Klima openly admits that Hurley did not expressly authorize Klima to make expenditures on the Alameda Unit. Pretrial Order ¶ 2(a)(8) (Doc. 40, p. 2). Klima readily conceded it is in breach of the Operating Agreement. Pretrial Order ¶ 2(a)(6) (Doc. 40, p. 2). In light of these admissions, even

if the Court chooses to allow a claim for breach of contract, the recovery is barred by Klima's breach.

The Substitute Parties cannot recover under equitable theories either, because they have unclean hands. "The clean hands doctrine in substance provides that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct." *Fina Oil & Chem. Co. v. Pester Mktg. Co.*, No. 95-1367-JTM, 1997 WL 225900, at *36-37 (D. Kan. Apr. 25, 1997) (citing *Green v. Higgins*, 217 Kan. 217, 220-21 (1975)). Klima has conceded its breach of the Operating Agreement; this breach alone should be sufficient to bar any recovery in equity either for Klima or for the substitute parties.

Further, Klima and the Substitute Parties are guilty of inequitable conduct because they are seeking to collect ancillary debts which they are not owed and have not paid. To recover under an equitable quasi-contract theory, there must be benefit be conferred. *Fischer Imaging Corp. v. Gen. Elec. Co.*, 187 F.3d 1165, 1173 (10th Cir. 1999). According to their agreement with Klima the Substitute Parties are entitled to "all amounts owed by defendants, including defendant Harry Hurley." The addendum to their agreement is schedule of the unpaid debts of the Unit, not Hurley. These ancillary debts have obviously not been paid by Klima or the Substitute Parties, so there is no basis in equity for the Substitute Parties to recover any amounts from Hurley. *See Fischer Imaging Corp.*, 187 F.3d at 1174 (quasi contract remedies are justified only where allowing defendant to retain a benefit conferred would result in inequity).

Additionally, any outstanding debt has been settled. In a January 11, 2016 letter, C&K sent Hurley a letter indicating, "Bill Conner and I have been able to reach an Agreement with Dennis Klima to resign as Operator of the Alameda Lease. We have also agreed to purchase his interest in the Lease *along with settling with Vendors and Interest Holders*." Exhibit B-1 (emphasis added).

The next day, Hurley received another letter from C&K, this time indicating that Bill Conner and [Mark Keenan] have finally been able to negotiate with Dennis Klima to resign as Operator. We have also agreed to purchase his interests. Bill and [Mark Keenan] have negotiated settlement *with all Vendors to make sure the Lease is clear of all liens or potential liens*." Exhibit B**-2** (emphasis added). The idea that an operator and co-working interest owner (Klima-Operator) could:

1. contract for services with itself (Kima-Contractor) and other vendors (ancillary debts),
2. neglect to pay for those services,
3. settle the accounts with itself (Klima-Contractor) and the vendors (ancillary debts), and then
4. proceed to factor or collect the unpaid and forgiven amounts owed against its non-operator co-working interest owners, to which it owes fiduciary obligations as operator,

is so utterly absurd and abhorrent it defies explanation, and most certainly equity. The inequity is only compounded by the fact that the Substitute Parties specifically sought to acquire these rights from Klima-Operator, with full notice of this litigation and *after* settling the amounts owed.

Equitable remedies are designed to protect those who have conferred a benefit on another and are without compensation. *See generally Fischer Imaging Corp.*, 187 F.3d at 1174 (regarding equitable remedy of quasi contract). That is not the case here. Their own agreement documents that they are treating their (improperly appointed) role as operator as nothing more than an opportunity to collect debts never paid – a wholly inequitable proposition. The failure to recognize that this case is about a contractor's lien is their mistake, and their bad motive precludes claims in equity. The Substitute Parties were notice of Klima's outright breach of the Operating prevents a claim for breach of contract, and chose to pursue this claim in any event. The Substitute Parties have no claims in contract or equity and their motion to substitute should be denied.

## **CONCLUSION**

For the foregoing reasons, that the substitute parties lack standing to assert any interest in this litigation and, even if the substitution is made, any recovery is barred. Therefore, Hurley respectfully requests that this Court deny Klima's motion to substitute parties and grant all other relief which this Court deems just and equitable.

        Respectfully submitted,

        MORRIS, LAING, EVANS, BROCK &
          KENNEDY, CHTD.


By:   /s/ Jonathan A. Schlatter
    Will B. Wohlford, #21773
    Jonathan Schlatter, #24848
    300 N. Mead, Ste. 200
    Wichita, KS 67202-2722
    Telephone: (316) 262-2671
    Facsimile: (316) 262-6226
    Email: wwohlford@morrislaing.com
           jschlatter@morrislaing.com
    *Attorneys for Defendant Harry Hurley*

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2016, I electronically filed the foregoing ***Response*** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to those parties that have registered in this case.

      /s/ Jonathan A. Schlatter
    Jonathan Schlatter, #24848